UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Ft. Lauderdale Division

CASE NO.

BIOAXONE BIOSCIENCES, INC.,
a Florida corporation, as successor in
interest to Bioaxone Therapeutic, Inc.,
a Canadian Business corporation,

      Plaintiff,

v.

NORDION (US), INC., a Delaware
corporation, formerly known as MDS,
INC.; and RICERCA BIOSCIENCES,
LLC., a Delaware Limited Liability
Company, as successor in interest to
MDS PHARMA SERVICES,
INC., a Nebraska corporation,

      Defendants.
_____/

**COMPLAINT FOR MONEY DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, BIOAXONE BIOSCIENCES, INC., a Florida corporation with its principal place of business in Ft. Lauderdale, Florida ("Bioaxone" or "Plaintiff")[1], by and through its undersigned counsel, files this civil action against Defendant, NORDION (US), INC., a

---

[1] BioAxone acquired all of the assets, including all rights to the drug Cethrin, from BioAxoneTherapeutique, Inc., a Canadian business corporation ("Therapeutique"). Therapeutique conveyed all of its intellectual property, as well as the name "Cethrin" to BioAxone. Therapeutique also transferred all rights in the clinical trial of Cethrin, including the Clinical Master Trial File, the investigation of a new drug (IND) file with the FDA, and the Clinical Trial Application (CTA) with Health Canada. Therefore, BioAxone is the successor in interest to all rights previously owned by Therapeutique.

Delaware corporation ("Nordion"), formerly known as MDS, INC., with its principal place of business in Ottawa, Ontario; and RICERCA BIOSCIENCES, LLC., a Delaware limited liability company with its principal place of business in Concord, Ohio ("Ricerca"), as the successor in interest of MDS PHARMA SERVICES, INC., a Nebraska corporation, ("MDS"); collectively referred to as the "Defendants." NORDION is a foreign corporation authorized to transact business in the State of Florida. MDS PHARMA SERVICES, INC. was a wholly owned subsidiary of MDS, INC., now known as NORDION (US), INC., and was a foreign corporation authorized to do and doing business in the State of Florida. RICERCA is a foreign limited liability company authorized to transact business in the State of Florida which is the successor in interest to MDS PHARMA SERVICES, INC., through its purchase and acquisition of MDS PHARMA SERVICES, INC., on or about March 2010.

## NATURE OF THE CASE

1. This is an action for negligence against the Defendants arising from the improper and negligent use of contaminated material in the preparation of the Bacterial Master Cell Bank ("MCB") for a new breakthrough drug, Cethrin™ (BA-210), researched and developed by BIOAXONE. Cethrin is a biologic drug that will provide the most advanced treatment for patients who have suffered acute spinal cord injury. Defendants negligently prepared the MCB using kanamycin they purchased that was made in China and that contained beef broth and avian products. The MCB is contaminated with beef broth and avian products that cause human disease including bovine spongiform encephalopathy ("BSE"), commonly known as mad cow disease, which created an unreasonably dangerous risk of the development of BSE in patients to whom the Cethrin made from the contaminated MCB would be administered.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the minimum jurisdictional requirements of this Court and because the Plaintiff is a citizen of a state different from the Defendants.

3. Venue for this action is proper in this Court because each Defendant holds a certificate of authority to transact business in Florida, is registered to transact business in Florida, and Plaintiff resides and transacts business in this District. Many of the acts that are alleged in this Complaint occurred in this District and at least one of the Defendants can be found, resides, or transacts business in this District.

4. At all times material hereto, the parties hereto transacted business related to Cethrin in Florida by and through their employees and/or agents including but not limited to participating in telephonic and in person meetings, correspondence, and making and/or accepting payments.

5. MDS PHARMA SERVICES, INC., was a wholly owned subsidiary of MDS, INC., now known as Defendant, NORDION. As its wholly owned subsidiary, NORDION, exercised extensive control over MDS PHARMA SERVICES and, as such, MDS PHARMA SERVICES, served as the agent or apparent agent of NORDION. In addition, NORDION sells its products in Florida and as such its products are in the stream of commerce throughout the State of Florida.

## PARTIES

6. At all times material hereto, Plaintiff, BIOAXONE, was and is the owner and developer of Cethrin, a new breakthrough biologic drug providing treatment for patients who have suffered acute spinal cord injury. Defendant, MDS was retained by BIOAXONE to create, prepare, and qualify a Bacterial Master Cell Bank to be used in the development of Cethrin.

7. At all times material hereto, Defendant, MDS PHARMA SERVICES, INC., provided discovery, pre-clinical studies, and clinical trial services to biopharmaceutical and biotechnology companies incorporated and doing business in Florida, such as BIOAXONE.

3

8. At all times material hereto, Defendant, MDS PHARMA SERVICES, INC., was a wholly owned subsidiary of Defendant, MDS, INC., now known as NORDION (US), INC., a Delaware corporation.

9. As of March 2010, Defendant, RICERCA is the successor in interest to MDS PHARMA SERVICES, INC., having acquired the discovery and preclinical business of Defendant, MDS PHARMA SERVICES, INC., from Defendant, NORDION, including approximately 600 associates in Bothell, Washington; Lyon, France; and Taipei, Taiwan. Defendants, MDS and RICERCA, shall hereinafter be referred to as MDS/RICERCA.

10. At all times material hereto, Defendant, MDS/RICERCA, was and is engaged in the business of biopharmaceutical research and development focusing on the developmental phase between intellectual property and submission of the investigational new drug application.

## GENERAL ALLEGATIONS

11. At all times material hereto, Defendant, MDS/RICERCA was retained by BIOAXONE to prepare a Bacterial Master Cell Bank ("MCB") complying with good manufacturing practices which, for the preparation of the MCB for BIOAXONE, which specifically excluded the use of animal origin products in the creation, formulation, preparation and qualification of the MCB.

12. A good manufacturing practice ("GMP") is a production and testing practice that assists in the assurance of the quality of the drug product. GMPs are enforced in the United States by the Food and Drug Administration ("FDA") under Section 501(B) of the 1938 Food, Drug, and Cosmetic Act, 21 U.S.C. § 351. Complying with GMPs is mandatory in pharmaceutical and biopharmaceutical manufacturing in order to obtain the right to study a biopharmaceutical drug in humans and to eventually obtain FDA approval. Failure to comply with GMPs in the manufacturing of a new drug may cause, among other problems, the drug to be deemed

adulterated and fail to be approved by the FDA for clinical investigation and/or commercialization. A drug product may be deemed adulterated if the manufacturing process was not performed in accordance with commonly accepted industry standards and practices.

13. Pursuant to the FDA regulations on GMPs, in order to assure that drug products meet appropriate GMP quality standards and to prevent instances of contamination for the safety and protection of the public, GMPs include establishing strong quality management systems, ***obtaining appropriate quality raw materials***, establishing robust operating procedures, ***detecting and investigating product quality deviations***, and maintaining reliable testing laboratories.[2]

14. As part of the GMPs that were relevant for the preparation of the MCB requested by and made for BIOAXONE, MDS/RICERCA had to record the entire manufacturing process, including all critical processes including its purchase and obtaining quality animal-free raw materials and reviewing the Certificates of Origin associated with those raw materials, in order to prevent contamination of the MCB with adventitious agents and to ensure the quality and safety of the MCB produced and, ultimately, the drug developed from the MCB.

15. At all times material hereto, BIOAXONE relied on MDS/RICERCA to follow and comply with all appropriate and specific GMPs in the development and preparation of the MCB for BIOAXONEwhich included the use of only animal-free raw materials. Specifically, MDS/RICERCA acknowledged and agreed that all derived components used in the preparation of the MCB were to be non-animal derived.

16. At all times material hereto, MDS/RICERCA knew or should have known that the use of animal-derived components that were not certified to be free of adventitious agents that were used in the creation of the MCB would create a foreseeable risk of causing serious disease in

---

[2] http://www.fda.gov/Drugs/DevelopmentApprovalProcess/Manufacturing/ucm169105.htm

5

humans, including bovine spongiform encephalopathy ("BSE"), commonly known as mad cow disease.

17. At all times material hereto, MDS/RICERCA knew or should have known that the use of animal-derived components in the preparation of the MCB must be certified and comply with FDA guidelines or they would create a foreseeable risk that the FDA would deem the MCB and any drug derived from the MCB (e.g., Cethrin) to be adulterated and would fail to approve Cethrin for either investigational testing or eventual use in treating human patients.

18. In 2003, BIOAXONE placed a Protocol Order with MDS/RICERCA to initiate the preparation, qualification and storage of the MCB, which became known as Study Number 0307301.

19. At all times material hereto, BIOAXONE met and agreed with MDS/RICERCA to prepare the MCB following GMPs including the use of animal-free raw materials.  At all times material hereto, MDS/RICERCA represented to BIOAXONE that MDS/RICERCA would avoid animal-derived products in the raw materials used in the creation of the MCB; that any raw materials used in the creation of the MCB would meet U.S. Pharmacopeia criteria or European Pharmacopeia criteria, whichever was most stringent; and the quality of the raw materials used in the creation of the MCB would be ensured through various means, including vendor audits.

20. At all times material hereto, kanamycin was one of the raw materials required in the preparation of the MCB.  MDS/RICERCA purchased and obtained kanamycin from Sigma-Aldrich, a life science product supplier.  The source documents for the kanamycin purchased by MDS/RICERCA reflects that it was made in China.  More importantly, a review and inspection of the Certificate of Origin for the kanamycin purchased and used by MDS/RICERCA in the

MCB states this kanamycin contained beef extract and chicken feathers and that it was not for human use.

21. At all times material hereto, MDS/RICERCA failed to advise BIOAXONE that the kanamycin used in the MCB contained animal-derived products. Moreover, at all times material hereto, MDS/RICERCA failed to indicate and/or disclose that the kanamycin contained animal-derived products in any documentation provided to BIOAXONE to be used in support for BIOAXONE's application for the investigation of the new drug, i.e, Cethrin, to be submitted to the FDA.

22. Upon receipt of the kanamycin, a reasonable and proper review and inspection by MDS/RICERCA of the related source documents, and specifically its Certificate of Origin, would have revealed that the kanamycin was not fit or intended for human use. As a result, MDS/RICERCA knew or should have known that use of the kanamycin in the preparation of the MCB did not comply with the GMPs, was violative of its own standard operating procedures and quality assurance standards, and was contrary to the representations MDS/RICERCA made to BIOAXONE regarding the animal-free raw materials to be used in the preparation of the MCB.

23. Moreover, instead of discarding and/or replacing the Chinese kanamycin containing animal-derived products with kanamycin that was animal-free and fit and intended for human use, MDS/RICERCA used the bovine-contaminated kanamycin in its preparation of the MCB for BIOAXONE.

24. At all times material hereto, the kanamycin purchased and used by MDS/RICERCA in its preparation of the MCB was manufactured using animal products, and specifically, contaminated with beef broth and chicken feathers from China thereby creating an unreasonably dangerous

foreseeable risk of adventitious agents that cause disease in humans including, but not limited to, the development of BSE in the patients to whom Cethrin would be administered.

25. At all times material hereto, MDS/RICERCA knew or should have known that the kanamycin it purchased and used in the preparation of the MCB was contaminated. Despite such actual or constructive knowledge, MDS/RICERCA negligently certified to BIOAXONE the quality assurance and GMP compliance of all raw materials used in preparing the MCB.

26. At all times material hereto, BIOAXONE had no knowledge, nor did it have reason to know, that MDS/RICERCA failed to comply with the GMPs regarding the raw materials used in the preparation of the MCB, and in its certification of the MCB to BIOAXONE. MDS/RICERCA failed to timely, diligently, properly or otherwise advise and inform BIOAXONE that the kanamycin purchased and used by MDS/RICERCA in the preparation of the MCB was contaminated and not fit or intended for human use.

27. On or about October 16, 2008, a formal status report was provided to BIOAXONE during which BIOAXONE was informed, **for the first time**, that the MCB was not GMP compliant.

28. At all times prior to October 16, 2008, MDS/RICERCA had actual or constructive knowledge that the kanamycin it purchased and used in the preparation of the MCB for BIOAXONE was contaminated and was not fit or intended for use in humans.

29. At all times prior to October 16, 2008, MDS/RICERCA had actual or constructive knowledge that the purchase and use of contaminated kanamycin in the preparation of the MCB for BIOAXONE created an unreasonably dangerous and foreseeable risk of adventitious agents that cause human disease including the development of BSE or mad cow disease in humans.

30. At all times material hereto, MDS/RICERCA knew that the preparation of the MCB for

BIOAXONE was for use in the development of a biologic drug, Cethrin, to be administered to humans.

31. At all times prior to October 16, 2008, MDS/RICERCA had actual or constructive knowledge that the purchase and use of contaminated kanamycin in the preparation of the MCB for BIOAXONE created a foreseeable risk that the FDA would deem Cethrin adulterated and cause the FDA and/or any other regulatory agency to fail to approve its use as a drug product to be administered to human patients.

32. At all times material hereto, MDS/RICERCA knew or should have known that it had a continuing duty to follow and comply with the GMPs in the preparation of the MCB. In addition to ensuring compliance with the GMPs, MDS/RICERCA had a duty to follow its own standard operating procedures and quality assurance standards in its purchase and use of animal-free raw materials in the preparation and qualification of the MCB for BIOAXONE.

33. Despite its actual or constructive knowledge of its use of the contaminated kanamycin in the preparation of the MCB, MDS/RICERCA failed to diligently, timely, properly or otherwise inform BIOAXONE that the kanamycin used in the preparation and qualification of the MCB was animal-derived, was not fit or intended for human use, and, as a result, had contaminated the MCB.

34. As a direct and proximate result of the purchase and use of contaminated kanamycin by MDS/RICERCA in its preparation of the MCB, BIOAXONE has been unable to continue the use of the MCB in the development of BIOAXONE'S biologic drug, Cethrin.

35. As a direct and proximate result of the failure by MDS/RICERCA to comply with the GMPs in the preparation of the MCB by and through its use of contaminated kanamycin, BIOAXONE's breakthrough biologic drug Cethrin would be deemed adulterated by the FDA

and not be approved for use in human patients because of the unreasonably dangerous and foreseeable risk of the development of BSE or mad cow disease in these patients.

## COUNT I

### NEGLIGENCE CLAIM AGAINST MDS/RICERCA

36. Plaintiff, BIOAXONE BIOSCIENCES, INC., realleges and incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Plaintiff, BIOAXONE, seeks money damages against Defendant, MDS/RICERCA for negligence.

38. As more fully described above, MDS/RICERCA owed a duty to BIOAXONE to follow and comply with the GMPs applicable to the preparation of the MCB made for BIOAXONE, its own standard operating procedures, and quality assurance standards in the preparation and qualification of the MCB.

39. As more fully described above, MDS/RICERCA owed a duty to BIOAXONE to fully and adequately inspect all source documents, and specifically the Certificates of Origin, of all raw materials purchased and obtained by MDS/RICERCA to be used in the preparation of the MCB for BIOAXONE, and to properly record all of the information related to the quality of the raw materials to be used in the preparation of MCB in order to assure the animal-free quality of the raw materials and to take all steps necessary and appropriate to prevent the contamination by adventitious agents of Cethrin, the ultimate drug produced using the MCB.

40. As more fully described above, MDS/RICERCA owed a duty to BIOAXONE to timely, diligently, properly and otherwise inform BIOAXONE regarding any and all issues or problems that arose during the manufacturing process including the quality of the raw materials obtained for use in the preparation of the MCB.

41. Specifically, MDS/RICERCA had a duty to BIOAXONE to timely, diligently, properly and otherwise inform and advise BIOAXONE that the kanamycin purchased and obtained by MDS/RICERCA was not an animal-free product, was not fit or intended to be used by humans, and could not be used in the preparation of the MCB.

42. As more fully described above, MDS/RICERCA breached its duties to BIOAXONE by negligently failing to comply with the GMPs, its own standard operating procedures, and quality assurance practices and principles established for the preparation of the MCB for BIOAXONE.

43. As more fully described above, MDS/RICERCA breached its duties to BIOAXONE by negligently failing to fully and adequately inspect and document all Certificates of Origin associated with all raw materials, and specifically the kanamycin which was purchased and obtained for use in the preparation of the MCB for BIOAXONE.

44. As more fully described above, MDS/RICERCA breached its duties to BIOAXONE by negligently purchasing and using animal-derived kanamycin in the preparation and qualification of the MCB, creating an unreasonably dangerous and foreseeable risk that the FDA would deem the MCB and, ultimately, the biologic drug Cethrin adulterated and fail to approve the use of Cethrin in human patients.

45. As more fully described above, MDS/RICERCA breached its duties to BIOAXONE by negligently failing to timely, diligently, properly or otherwise inform and advise BIOAXONE that the kanamycin MDS/RICERCA purchased and obtained for use in the preparation of the MCB was an animal-derived product, was sourced from China, and was contaminated with beef broth and chicken feathers, and was not intended and fit for human use, and created an unreasonably dangerous and foreseeable risk of the development of BSE or mad cow disease if used in a drug administered to human patients.

46. As more fully described above, MDS/RICERCA breached its duties to BIOAXONE by negligently using animal-derived kanamycin from China in the preparation and qualification of the MCB and negligently certified that its preparation and qualification of the MCB was compliant with the GMPs.

47. As a direct and proximate result of the negligent conduct of MDS/RICERCA as stated above, BIOAXONE has suffered money damages in an amount greater than Ninety Million Dollars ($90,000,000), and continues to suffer money damages for which MDS/RICERCA is liable.  The damages incurred, and which continue to be incurred, by BIOAXONE include but are not limited to:

   a.   the costs associated with the ameliorative corrections required to be made to the MCB in order to comply with the GMPs;

   b.   the costs associated with the preparation of a new MCB that is GMP compliant;

   c.   the cost associated with the fermentation and purification of a new batch of Cethrin (drug substance) that can be used to formulate drug product for further clinical trials;

   d.   the costs associated with the GMP formulation, vialing, capping, and packaging of the Cethrin drug product that can be used in further clinical trials;

   e.   the costs associated with the delay in the continued development of the biologic drug Cethrin as a result of the negligent contamination of the MCB;

   f.   the costs associated with the delay in the progress of the Cethrin clinical trials as a result of the negligent contamination of the MCB;

   g.   and the costs associated with the delay in the FDA approval process for Cethrin as a result of the negligent contamination of the MCB; and

    h.     any and all damages incurred by Plaintiff as a direct and proximate result of the negligence of the Defendants because of the use of contaminated Chinese kanamycin in the preparation of the MCB which has prevented FDA approval of Cethrin and the further use, distribution and administration of Cethrin to needy patients.

**WHEREFORE** the Plaintiff, BIOAXONE BIOSCIENCES, INC., demands the entry of a final judgment against Defendant, RICERCA BIOSCIENCES, LLC, for money damages in an amount in excess of the minimum jurisdictional limits of this Court, together with court costs and such other and further relief as this Court deems just and proper.

## COUNT II
## VICARIOUS LIABILITY – NORDION

48. Plaintiff, BIOAXONE BIOSCIENCES, INC., realleges and incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

49. NORDION is vicariously liable for the negligent acts or omissions of MDS PHARMA SERVICES, INC., committed while MDS was a wholly owned subsidiary of MDS, INC., now known as NORDION (US), INC.

50. As a direct and proximate result of the negligent conduct of MDS PHARMA SERVICES, INC., NORDION's wholly owned subsidiary, as stated above, BIOAXONE has suffered money damages in an amount greater than Ninety Million Dollars ($90,000,000), and continues to suffer money damages for which NORDION is liable. The damages incurred, and which continue to be incurred, by BIOAXONE include but are not limited to:

    a.     the costs associated with the ameliorative corrections required to be made to the MCB in order to comply with the GMPs;

b.  the costs associated with the preparation of a new MCB that is GMP compliant;

c.  the cost associated with the fermentation and purification of a new batch of Cethrin (drug substance) that can be used to formulate drug product for further clinical trials;

e.  the costs associated with the GMP formulation, vialing, capping, and packaging of the Cethrin drug product that can be used in further clinical trials;

e.  the costs associated with the delay in the continued development of the biologic drug Cethrin as a result of the negligent contamination of the MCB;

f.  the costs associated with the delay in the progress of the Cethrin clinical trials as a result of the negligent contamination of the MCB;

g.  and the costs associated with the delay in the FDA approval process for Cethrin as a result of the negligent contamination of the MCB; and

h.  any and all damages incurred by Plaintiff as a direct and proximate result of the negligence of the Defendants because of the use of contaminated Chinese kanamycin in the preparation of the MCB which has prevented FDA approval of Cethrin and the further use, distribution and administration of Cethrin to needy patients.

WHEREFORE, Plaintiff, BIOAXONE BIOSCIENCES, INC., demand judgment in its favor against Defendant, NORDION (US), INC., for compensatory, economic, and consequential damages in an amount greater than the jurisdictional limits of this Court, together with all costs of this action, interest, and any other further relief this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, BIOAXONE BIOSCIENCES, INC., demands a trial by jury of all issues triable as a matter of right.

**ARONOVITZ LAW**
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 2630
2 South Biscayne Boulevard
Miami, Florida 33131
305-372-2772 Telephone
305-397-1886 Facsimile

By: /s/ Tod Aronovitz
    Tod Aronovitz (FBN 186430)
    Barbara Perez (FBN 989304)